UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| KIMBERLY ANDREA MULLER, | No. 1:18-cv-01184-GSA |
|---|---|
| Plaintiff, | |
| v. | **ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |
| ANDREW SAUL,[1] Commissioner of Social Security, | |
| Defendant. | |

### I. Introduction

Plaintiff Kimberly Andrea Muller ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] *See* Docs. 12, 15 and 16. Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and applicable law. Accordingly, Plaintiff's appeal is denied.

///

---

[1] Commissioner of Social Security Andrew Saul is substituted as Defendant pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 USC 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 4 and 6.

1

## II. Procedural Background

On April 11, 2014, Plaintiff filed an application for disability insurance benefits alleging disability beginning October 15, 2010. AR 17. The Commissioner denied the applications initially on May 28, 2014, and upon reconsideration on October 9, 2014. AR 17. On November 21, 2014, Plaintiff filed a request for a hearing before an Administrative Law Judge. AR 17.

Administrative Law Judge G. Ross Wheatley presided over an administrative hearing on June 7, 2016. AR 32-74. Plaintiff appeared and was represented by an attorney. AR 32. Impartial vocational expert Lorian Ink Hyatt testified. AR 32.

Administrative Law Judge Daniel G. Heeley presided over a second administrative hearing on September 19, 2017. AR 75-102. Plaintiff appeared and was represented by an attorney. AR 75. Impartial vocational expert Nina Salla testified. AR 75.

On September 28, 2017, ALJ Healey denied Plaintiff's application. AR 17-26. The Appeals Council denied review on June 27, 2018. AR 1-4. On August 31, 2018, Plaintiff filed a complaint in this Court. Doc. 1.

## III. Factual Background

### A. Plaintiff's Testimony

#### 1. June 7, 2016

Plaintiff (born October 23, 1965) lived in a house with her husband and their pet dog. AR 49. On a typical day, she was able to manage her own personal care. AR 49. Depending on her pain level on a particular day, she might be able to perform light housekeeping, do a little laundry or cook. AR 49. She enjoyed reading and television. AR 51. She sometime used a computer but was no longer able to type for very long. AR 52. On the days that her joints were swollen and painful, Plaintiff was less capable of working and needs to lie down and rest. AR 61.

Plaintiff last worked in July 2009, when she was laid off from her job. AR 40. She had a driver's license and continued to drive. AR 52-53. Because her husband worked in a supermarket, he generally shopped for the family. AR 54.

Despite other impairments such as high cholesterol, hypertension and cervical radiculopathy, Plaintiff's daily functioning was most affected by rheumatoid arthritis. AR 40.

Although Plaintiff was taking medications daily and biweekly infusions of Humira, she still experienced daily arthritis pain with some days worse than others. AR 41-42. Her doctor encouraged exercise, and Plaintiff was able to walk around two blocks a few times weekly. AR 42.

### 2. September 19, 2017

Plaintiff's testimony was generally consistent with the first hearing. Her husband helped with any heavy task or lifting. AR 84.

Plaintiff's rheumatoid arthritis affected her hands, wrists, knees and ankles on both sides. AR 79. Her left index finger "lock[ed] up" (trigger finger) but could not be surgically repaired because of her rheumatoid arthritis. AR 80. About three days a week, her joints swelled, particularly her knees, ankles and knuckles. AR 89-91. When her hands were swollen and painful, Plaintiff could only lift three or four pounds and had difficulty manipulating buttons or using a pen or pencil. AR 91-92. Pain also reduced her ability to concentrate. AR 95.

Plaintiff was able to sit for 30 to 60 minutes before needing to get up and walk for five minutes or so. AR 87. She could lift about ten pounds. AR 87.

### B. Medical Records

Kerry B. Evnin, M.D., a family physician, provided Plaintiff's primary care records from May 2011 through January 2017. AR 369-419, 558-625, 678-91, 757-65. Dr. Evnin's records indicate that Plaintiff had a history of hypercholesterolemia, hypertension, mild-to-moderate mitral regurgitation, mild tricuspid regurgitation, grade 1 diastolic dysfunction, hyperalphalipoproteinemia, fatty liver, elevated LFTS, C6-7 radiculopathy, alcohol abuse, metabolic syndrome, impaired fasting glucose and medication noncompliance. However, the doctor's notes indicated that Plaintiff was currently taking medication as directed. Plaintiff and Dr. Evnin agreed that Plaintiff could do a better job of watching her diet.

X-rays taken May 18, 2011, revealed mild osteoarthritis of the knees, slightly worse on the right. AR 369. Foot x-rays taken that day were unremarkable. AR 370. Hand x-rays were unremarkable but for mild radiocarpal joint space narrowing. AR 371.

///

Dr. Evnin referred Plaintiff to Kanwal Khanna, M.D., for treatment of joint pain, joint stiffness and fatigue. The record includes Dr. Khanna's treatment notes from June 2011 to June 2017. AR 426-92, 499-537, 544-52, 627-60, 696-714, 721-42, 745-56. The doctor's notes illustrate the variable nature of Plaintiff's disease which caused severe pain and swelling in various affected joints at various times.

In June 2011, Dr. Khanna noted disproportionate pain in Plaintiff's left knee and wondered whether the pain, accompanied by popping and occasional locking, indicated internal derangement. AR 490-91. Magnetic resonance imaging of Plaintiff's left knee in July 2011 revealed small joint effusion and a tiny Baker cyst, but no meniscal tear or internal derangement. AR 427.

In July 2011, Plaintiff had developed painful right third digit dactylitis. AR 487. She had chronic pain and swelling in her other joints. AR 487. Dr. Khanna discontinued Tramadol[3] and prescribed Vicodin[4] for Plaintiff's pain. AR 488. In September 2011, Plaintiff had increased pain in her neck and left ankle, and no improvement in other affected joints. AR 485. In November 2011, Plaintiff had decreased motion, synovitis, dactylitis and pain in various joints of her hands and fingers. AR 481. In May 2012, Plaintiff experienced a severe episode of pain and swelling in her left elbow for two days. AR 473. In May and October 2012, Dr. Khanna noted that Plaintiff had one-half to one-hour morning stiffness and daily pain. AR 467, 470. Plaintiff was limiting her activity to avoid provoking symptoms. AR 467, 470. Dr. Khanna noted that Plaintiff did not appear able to work full time, even in a sedentary job. AR 467, 470. In December 2012, the doctor noted increasing pain, particularly in the right hand, right wrist and right elbow, but also in elbows, shoulders, hips, knees, ankles and feet. AR 463. He also suspected right carpal tunnel syndrome. AR 463.

In February 2013, Dr. Khanna noted triggering of Plaintiff's second digits bilaterally. AR 460. In April 2013, Plaintiff had pain in her second through fifth MCP joints as well as hands,

---

[3] Tramadol is an opiate drug prescribed to relieve moderate to moderately severe pain. www.medlineplus/druginfo/meds/a695011.html (accessed November 6, 2019).

[4] Vicodin is a combination drug including hydrocodone (opiate) and acetaminophen (non-opiate) pain relievers. www.medlineplus/druginfo/meds/a601006.html (accessed November 6, 2019).

4

wrists, elbows, knees, ankles and feet. AR 505. Plaintiff was getting minimal exercise by walking. AR 505. In June 2013, Plaintiff's knees and ankles were painful and stiff. AR 502. In September 2013, Dr. Khanna began considering whether to change Plaintiff's medication since the Humira did not give Plaintiff a full two weeks of relief. AR 522. The doctor discussed alternative medications and their side effects with Plaintiff and advised her to consider whether she wanted to change to another biologic. AR 522. In November 2013, Plaintiff was symptomatic in her hands, wrists, elbows, knees, ankles and feet. AR 519-20. She had increased pain in her left hand and decreased grip strength. AR 520. Current medications were not controlling Plaintiff's pain. AR 520.

In January 2014, Plaintiff continued to exhibit disease activity with pain in her hands, wrist, elbows, shoulders, knees, ankles and feet and occasional triggering of several digits. AR 517-18. Because Plaintiff did not want to change Humira[5] for another biologic, Dr. Khanna increased the dosage of Azulfidine. AR 518. The doctor also prescribed zolpidem (Ambien) for insomnia. AR 518. In March 2014, Plaintiff reported mild to moderate joint pain and occasional triggering of her left hand second digit. AR 514. Dr. Khanna opined that the triggering was not yet serious enough to require an injection, but that increased triggering would require an injection to prevent a permanent flexion deformity. AR 515. Plaintiff was trying to walk regularly but walking occasionally caused ankle pain. AR 514. Dr. Khanna explained appropriate and inappropriate limits and regimens for exercise and suggested that soft ankle supports could decrease Plaintiff's ankle pain. AR 515.

In May 2014, Plaintiff was tolerating Humira in combination with leflunomide and sulfasalazine, and elected not to make therapeutic changes. AR 545. Plaintiff's husband told Dr. Khanna that Plaintiff was not sleeping well and sometimes seemed more forgetful than usual. AR 545. Plaintiff reported that she did not find Ambien helpful and did not take it regularly. AR 545. She had difficulty staying asleep but did not think her pain was the problem. AR 546. Dr.

---

[5] Humira (Adalimumab) injection is used alone or with other medications to relieve the symptoms of certain autoimmune disorders including rheumatoid arthritis. www.medlineplus.gov/druginfo/meds/a603010.html (accessed October 30, 2019).

Khanna prescribed a trial of off-label Elavil[6] to be taken at bedtime. AR 546. In December 2014, Plaintiff's trigger finger had begun to return after injected medication had alleviated it. AR 645, 647. Thinking that her dog's leash might be injuring Plaintiff's finger, Dr. Khanna suggested an accommodation using a vascular [clip?]. AR 647. The doctor encouraged walking and stretching to promote healthy muscle tone and range of motion. AR 647.

In January 2015, Plaintiff accidentally injured her neck and shoulder while trying to control her dog. AR 566. She could lift her arm only with severe pain. AR 566. X-rays revealed no fracture or dislocation of Plaintiff's shoulder or neck. AR 564-65. In December 2015, Dr. Evnin expressed concern about Plaintiff's obesity, noting that Plaintiff was only walking about twenty minutes every other day and was not watching her diet carefully. AR 558. Dr. Evnin advised Plaintiff to stop drinking any alcohol, walk 45 to 60 minutes daily and reduce stress. AR 561.

In August 2015, Plaintiff was experiencing pain and swelling of the right thumb metacarpal joint. AR 638. Plaintiff thought she was doing fairly well and because she was struggling with the large number of medications prescribed for her, had not yet tried Rayos.[7] In October 2015, Plaintiff was experiencing severe pain and triggering of her left second digit. AR 636.

In January 2016, Dr. Khanna noted that Plaintiff was still experiencing inflammation but that her medication was sufficient to prevent progressive deformities. AR 635. Her fatigue appeared to be manifestation of her autoimmune disease. R 635. In March 2016, Dr. Khanna noted that Plaintiff took pain medications sparingly and showed no signs of narcotic impairment. AR 627. Her knees were more painful than other joints, including hands, wrists, elbows, shoulders, ankles and feet. AR 628. Activity increased Plaintiff's pain. AR 628. Dr. Khanna attributed Plaintiff's chronic insomnia to pain. AR 628.

///

---

[6] Elavil (amitriptyline) is an antidepressant. www.medlineplus/druginfo/meds/a682388.html (accessed November 6, 2019).

[7] Rayos is delayed-release prednisone used to treat certain types of arthritis. www.rayosrx.com/patients/faqs; www.medlineplus.gov/druginfo/meds/a601102.html (accessed October 30, 2019).

In August 2016, Plaintiff was doing well despite daily pain. AR 701. Dr. Khanna encouraged Plaintiff to become more physically active. AR 701. In October 2016, Dr. Khanna noted that Plaintiff's pain was fairly mild but indicated that additional walking would improve her condition. AR 698. He gave Plaintiff samples of Rayos to reduce her pain on the days just before her biweekly Humira injection. AR 698.

At her December 2016 appointment with Dr. Khanna, Plaintiff reported that adding Rayos to her medications had been helpful. AR 693. She was doing well despite pain and stiffness in her hands, wrists, elbows, shoulders, knees, ankles and feet. AR 693. Triggering of her fingers had stabilized. AR 693. Dr. Khanna's examination revealed no tenderness or swelling. AR 694. Dr. Khanna wrote:

> Today was a good day for her. We assessed her pain with a visual analog scale. I calculated a CDAI score. She denies score is 10. That is a borderline low level of disease rheumatoid arthritis activity [*sic*]. I think some days are a little worse. She is pleased with the current regimen. I discussed the fact that I think she could be a little more active. I think the reason she has controlled pain now is that she is totally sedentary. She does no physical activity. I think she is totally disabled now as she has to limit her activity in order not to provoke symptoms. Her body mass index is a little higher than it should be. Hopefully with more exercise and maybe a low-carb/low sugar diet she can improve on her body mass index. I did a functional status assessment. She does not work outside the home so that no vocational issues [*sic*]. I think she is able to do all vocational and self-care activities. I would put her functionally in class II. She can do these normal activities despite some joint limitations. We discussed her glucocorticoid management. She is on an average dose of steroids which is very low. I discussed her disease prognosis. Her disease prognosis is fair to poor. She has multiple joint involvement with aggressive disease requiring biologic therapy even though she doesn't have major organ complications . . . . . I told her if she doesn't feel like going for long walks she should at least do range of motion and stretching.

AR 695.[8]

At Plaintiff's 2017 appointments Dr. Khanna continued to encourage Plaintiff to walk. AR 723, 726, 730. In February 2017, Dr. Khanna noted that Plaintiff's trigger finger had not recurred. AR 730.

---

[8] The Rheumatoid Arthritis Clinical Disease Activity Index (CDAI) assesses tender and swollen joints to determine the level of disease activity. www.merckmanuals.com/medical-calculators/RheumatoidArthritisCDAI.html (accessed November 5, 2019). A score greater than 2.8 and less than or equal to ten indicates low disease activity. *Id.* A score greater than ten and less than or equal to 22 indicates moderate disease activity. *Id.*

7

Plaintiff saw Dr. Evnin in January 2017 after not having an appointment for over a year. AR 757. Plaintiff's rheumatoid arthritis then affected primarily her knees and hands. AR 757. Plaintiff was not compliant with her prescriptions for amlodiprine/benazepril and atorvastatin, did not exercise regularly and continued to consume alcoholic beverages. AR 757.

On September 8, 2017, Plaintiff's prescription medications included: Humira, Leflunomide,[9] Sulfasalazine,[10] Norco,[11] Lotrel,[12] Lipitor,[13] and Rayos. AR 361.

### IV. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112

---

[9] Leflunomide is used alone or with other medications to treat rheumatoid arthritis, a condition in which the body attacks its own joint, causing swelling, pain and loss of function. www.medlineplus.gov/druginfo/meds/a600032.html (accessed October 30, 2019).

[10] Sulfasalazine is used as a delayed-release anti-inflammatory drug used to reduce inflammation in rheumatoid arthritis. www.medlineplus.gov/druginfo/meds/a682204.html (accessed October 30, 2019).

[11] Norco (acetaminophen and hydrocodone is prescribed to relieve moderate to severe pain. www.medlineplus.gov/druginfo/meds/a601006.html (accessed October 30, 2019).

[12] Lotrel (Amlodipine and Benazepril) is used to treat high blood pressure. www.medlineplus.gov/druginfo/meds/a601018.html (accessed October 30, 2019).

[13] Lipitor (Atorvastatin) decreases the amount of fatty substances such as low-density lipoprotein (LDL) cholesterol and triglycerides in the blood and increases the amount of high-density lipoprotein (HDL) cholesterol in the blood. www.medlineplus.gov/druginfo/meds/a600045.html (accessed October 30, 2019).

F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V. <u>The Disability Standard</u>

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).

## VI. <u>Summary of the ALJ's Decision</u>

Administrative Law Judge Heely found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of October 15, 2010, through her date last insured of December 31, 2014. AR 19. Her severe impairments were inflammatory arthritis and obesity.

9

AR 19. None of the severe impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526). AR 19.

The ALJ concluded that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(c), except that she could never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs; occasionally balance, stoop, kneel and crouch; never crawl; never work around hazards such as moving dangerous machinery or unprotected heights; and, occasionally reach overhead bilaterally and engage in bilateral handling or fingering activities. AR 20.

Plaintiff was not able to perform any past relevant work. AR 24. Under the Medical-Vocational Rules, Plaintiff was not disabled whether or not she had transferable job skills. AR 25. In the alternative, she was able to perform other jobs that existed in significant number in the national economy. AR 25. Accordingly, the ALJ found that Plaintiff was not disabled from October 15, 2010 through December 31, 2014. AR 26.

### VII. Analysis of Expert Medical Opinion

Plaintiff contends that the ALJ erred in disregarding the opinion of Dr. Khanna, a treating physician. The Commissioner responds that the ALJ appropriately gave Dr. Khanna's opinion little weight since it was inconsistent with the doctor's records of Plaintiff's treatment.

#### A. Medical Opinions

##### 1. Agency Physicians

Performing the initial review of Plaintiff application on May 28, 2014, Lydia Kiger, M.D., noted that Plaintiff was diagnosed with seronegative rheumatoid arthritis which had been treated with three immunomodulatory medications and a recent dose of prednisone. AR 106. Despite recent disease activity, Plaintiff remained functional. AR 106. Dr. Kiger opined that Plaintiff had the residual functional capacity to perform light work with postural and manipulative restrictions. AR 106. Specifically, Plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently, and sit, stand or walk six hours in an eight-hour workday. AR 108. Plaintiff had unlimited ability to balance but could only occasionally stoop, kneel, crouch, crawl or climb

ramps, stairs, ladders, ropes or scaffolds. AR 108. Bilaterally, she had unlimited ability to feel but limited ability to handle, finger or reach overhead. AR 108-09. Accordingly, the agency determined that Plaintiff was not disabled. AR 111.

When performing the reconsideration review on October 9, 2014, Roger Fast, M.D., agreed with the initial evaluation and determination of residual functional capacity. AR 117-119.

### 2. **Dr. Khanna**

On June 27, 2016, Dr. Khanna completed a Physical Medical Source Statement submitted by Plaintiff's attorney. AR 666-68. Plaintiff's diagnosis was rheumatoid arthritis, which caused pain and fatigue. AR 66. Her prognosis was fair. AR 666. Plaintiff could never lift more than ten pounds and could rarely lift less than ten pounds. AR 667. Plaintiff could walk for one to two blocks, sit for an hour at a time, and stand for twenty minutes at a time. AR 666. She could stand or walk less than two hours and sit about four hours in an eight-hour work day. AR 666. Plaintiff needed to be able to change positions at will and walk about five minutes every half hour. AR 666-67. She did not need to raise her legs while sitting or use an assistive device while walking. AR 667.

Plaintiff could occasionally stoop; rarely twist, crouch or climb stairs; and, never climb ladders. AR 667. She had significant limitations of handling or fingering, and could not perform any manipulative function more than 5 percent of the workday. AR 667. She would be off task 25 percent or more of a typical workday and was incapable of even low stress work. AR 667. Plaintiff was likely to be absent from work four days monthly. AR 558. Plaintiff was likely to need an unscheduled one-to-two hour break daily to sit quietly. AR 668.

### 3. **Consultative Examination: Dr. Sharma**

On June 29, 2016, internist Satish K. Sharma, M.D., conducted a consultative examination of Plaintiff. AR 674-76. Plaintiff's blood pressure was high (160/90), and Dr. Sharma advised Plaintiff to seek treatment from her personal physician. AR 675. Dr. Sharma observed:

> She has swelling of the metacarpophalangeal and proximal interphalangeal joints in the fingers of both hands. She has tenderness to palpation of finger joints, She has tenderness to palpation in the dorsum of both the wrists. She has mild pain on dorsiflexion of the right wrist at 30 degrees and palmar flexion at 40

> degrees. She has pain on full dorsiflexion of the left wrist. She has tenderness to palpation over the superolateral aspect of both the shoulders. She has pain on full abduction of the right shoulder, She has tenderness to palpation in the prepatellar region in both the knees. She has pain on flexion of the right knee at 100 degrees and left at 135 degrees. She has pain on dorsiflexion of the right ankle at 10 degrees and plantar flexion at 20 degrees.

AR 675.

Plaintiff had no tenderness to palpation and full range of motion of the cervical, thoracic and lumbar spine. AR 675. Straight leg raising was negative bilaterally. AR 675. No muscle spasms were noted. AR 675. Plaintiff displayed normal motor strength, muscle bulk and tone, and hand grip strength. AR 676. Plaintiff walked with a limp on the lower right extremity. AR 676. She was unable to do toe walking and heel walking. AR 676.

Dr. Sharma opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, and walk or stand six hours in an eight-hour workday. She had no limitations of sitting, speech, hearing or seeing. Plaintiff had bilateral fingering limitations because of joint swelling and tenderness of the finger joints. AR 676.

### 4. **Unidentified Medical Source Statement**

The record includes a Medical Source Statement of Ability to Do Work-Related Activities (Physical) at AR 671-73. Although the source of the statement is not identified, the statement is consistent with and adjacent to Dr. Sharma's narrative statement.

### B. **Determining Residual Functional Capacity**

"Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The residual functional capacity assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual

functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen*, 80 F.3d at 1285. The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

**C.     The ALJ Properly Analyzed Evidence in the Record as a Whole**

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4),

///

13

416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

The ALJ gave great weight to the opinions of the agency physicians, Drs. Kiger and Fast, which the judge found to set forth detailed explanations of the evidence reviewed and the evidentiary bases for the opinions. AR 22. The ALJ noted, however, that evidence introduced at the hearing level established greater limitations in postural and environmental restrictions, accounting for the modification of the agency physicians' opinions in the ALJ's determination of Plaintiff's residual functional capacity. AR 22.

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Such independent reasons may include laboratory test results or contrary reports from examining physicians and Plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes*, 881 F.2d at 755).

The ALJ gave partial weight to Dr. Sharma's consultative opinion. AR 23. The AJJ noted that the opinion reflected Dr. Sharma's examination of Plaintiff and set forth a detailed discussion of the evidentiary findings on which the doctor's opinion relied. AR 23. The ALJ wrote:

> [E]vidence introduced at the hearing level is inconsistent with the opinion concerning the claimant's ability to walk at one time and establishes that the claimant has greater limitations in functioning in postural and environmental activities as outlined in the residual functional capacity assessment above. The evidence reveals the claimant has been diagnosed and treated for arthritis and obesity during this time. She complained of persistent pain and her examinations revealed mild to moderate tenderness and pain upon examination. Imaging studies revealed arthritic changes in the bilateral hands and knees. Otherwise the opinion is consistent with imaging studies, diagnostic findings, objective findings treatment history, statements of the claimant that medications improved her symptoms , and evidence of her activities.

AR 23.

The ALJ gave little weight to Dr. Khanna's medical source statement. AR 23-24. He explained:

///

> While based on a treatment relationship, the opinions are overall inconsistent with the claimant's treatment history and noted findings on examinations throughout the relevant period of time. While the record reveals the claimant underwent regular care, her objective findings were noted to be overall unremarkable and/or normal throughout. The level of care she required was essentially unchanged during this time. She frequently reported doing well and that the medications were helping manage her symptoms. She reported walking regularly, alone and at times with her dog. In fact, during a visit in 2012 the claimant was noted to have marked improvement in her symptoms since she started treatment. Additionally, the opinion is inconsistent with evidence of claimant's activities including her ability to attend to personal care and hygiene, manage her appointments and medications, care for her dog, perform light housekeeping chores, drive, shop, and prepare meals. Finally, the opinion includes little discussion of findings that were reviewed or relied upon.

AR 24 (citations to record omitted).

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. He properly determines the weight to be given each medical opinion by considering the evidence in the record as the ALJ did here. 20 C.F.R. § 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). The record must include objective evidence to support the medical opinion of the claimant's residual functional capacity. *Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999). Inconsistencies with the overall record or with a physician's own notes are a valid basis to reject a medical opinion. *Molina v. Astrue*, 674 F.3d 1104, 1111-1112 (9th Cir. 2012) (recognizing that a conflict with treatment notes is a germane reason to reject a treating physician's assistant's opinion); *Connett v. Barnhart,* 340 F.3d 871, 875 (9th Cir. 2003) (rejecting physician's opinion when treatment notes provide no basis for the opined functional restrictions); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (incongruity between questionnaire responses and the Plaintiff's medical records is a specific and legitimate reason for rejecting an opinion); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-693 (9th Cir. 2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject a treating physician's opinion).

///

///

The Court is not required to accept Plaintiff's characterization of her treatment records. The ALJ fully supported his evaluation of the medical opinions and the limited weight he accorded Dr. Khanna's opinion with other evidence of record.

Even if this Court were to accept that the record could support Plaintiff's opinion, the record amply supports the ALJ's interpretation as well. When the evidence could arguably support two interpretations, the Court may not substitute its judgment for that of the Commissioner. *Jamerson*, 112 F.3d at 1066.

**VIII. Conclusion and Order**

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Kimberly Andrea Muller.

IT IS SO ORDERED.

Dated: **November 12, 2019**     /s/ Gary S. Austin
UNITED STATES MAGISTRATE JUDGE